## DIVERSION LAKE CLUB v. HEATH et al.

No. 7765.

Court of Civil Appeals of Texas. Austin.

July 13, 1932.

Hertzberg & Kercheville and Templeton, Brooks, Napier & Brown, all of San Antonio, for appellant.

Ben H. Kelly, of San Antonio, and Ocie Speer, of Austin, for appellees Heath and Matthews.

Marcus W. Davis, of San Antonio, for appellee Norman W. Self.

BLAIR, J.

In this case, an appeal from a judgment perpetually restraining appellant Diversion Lake Club, a corporation, and its officers, agents and servants, from interfering with

appellees R. W. Heath, M. L. Matthews, and N. W. Self, in the use of Medina river and Diversion Lake and the public waters thereof, as a fishing place, appellees, as relators, have filed a motion praying that appellant Diversion Lake Club and certain of its officers, agents and servants, as respondents, be adjudged in contempt of this court and for an order restraining respondents from violating the permanent injunction appealed from pending the final disposition of the case by this court. They allege in substance that respondents are unlawfully and wrongfully refusing to allow relators to enter upon the said river and lake, and the public waters thereof, by means of the public road and bridge across same, and to fish therein as they have a right to do under the permanent injunction granted herein, which was in no manner superseded by this appeal; but was and is now in full force and effect. Specifically they allege that respondents demanded that relators not go in and upon the waters of said river and lake and fish; and threatened to cause complaints to be filed and the arrest of relators for trespassing if they did do so in the manner aforesaid.

In answer respondents say, first, "that an order preserving the status quo pending the review of the trial court's judgment would be an order putting into effect the conditions existing at the time of the bringing of this suit, and before the entry of the judgment here on review; and that relators seek not to preserve the status quo, but to preserve it by the enforcement of the judgment complained of."

■■ This answer merely raises the question of what is the status quo of the parties pending the appeal from the judgment perpetually enjoining respondents from interfering with the rights of relators to use the waters in question for fishing; that is, it is argued that the judgment for permanent injunction does not itself maintain the status quo, but actually changes the status quo as it existed when the suit was filed and before the judgment was entered. This contention is not sustained. The authorities are uniform in holding that, as regards a prohibitive injunction, as distinguished from a mandatory injunction, the subject-matter of the suit is the order or judgment restraining the acts about to be committed, or the continuance of the acts which a person is performing at the time the restraining order is issued, and that, notwithstanding an appeal, the judgment is still the measure of such rights of the parties as were adjudicated, and, until reversed, it operates as res adjudicata of the rights adjudicated as effectively as if no appeal had been taken. Respondents did not appeal on supersedeas bond, and, if they had, the great weight of authority, including Texas decisions, hold that an appeal from a final decree granting a prohibitive perpetual injunction

and the giving of a supersedeas bond will not have the effect of modifying or suspending the decree so as to permit the doing of the acts enjoined pending the appeal. Ford v. State (Tex. Civ. App.) 209 S. W. 490; State v. Superior Court, 39 Wash. 115, 80 P. 1108, 1 L. R. A. (N. S.) 554, 109 Am. St. Rep. 862, 4 Ann. Cas. 229. Note, I L. R. A. (N. S.) 555; Hulbert v. California Portland Cement Co., 161 Cal. 239, 118 P. 928, 38 L. R. A. (N. S.) 436; High on Injunctions (3d Ed.) § 1698a.

In the Ford-State Case, supra, it is held that this court has the power to issue a writ of injunction pending disposition of a case on appeal from a judgment granting a permanent injunction against selling liquor, where such writ was necessary to preserve the status quo or to preserve the subject-matter of the suit pending appeal, and that the giving of a supersedeas bond did not affect the rule. See, also, Hubbart v. Bank, 55 Tex. Civ. App. 504, 119 S. W. 711.

Respondents answer, second, that, after the entry of the judgment herein and after the perfection of this appeal, the board of water engineers of the state of Texas granted respondent Diversion Lake Club a permit to appropriate the waters of Diversion Lake for a game preserve and fishing resort under the provisions of article 7470a, Vernon's Ann. Civ. St.; that, relying in good faith upon this right, and regarding it as a newly acquired title in and to the rights being asserted over the waters of said Diversion Lake, respondents proceeded to warn relators and others of said rights and to demand that said rights be respected by them; and that these newly acquired rights or title to the waters of the said Diversion Lake cannot be tried and determined in this summary proceeding to punish for contempt and for a temporary restraining order pending the determination of this appeal.

In reply to this answer, relators alleged that the waters of Medina river and Diversion Lake had been found in this case to be navigable waters of streams and lakes within the meaning of the Constitution of this state and of article 4026, R. S. 1925, declaring the fish of such waters "to be the property of the people of this State," that the permit granted by the board of water engineers did not extend to respondent Diversion Lake Club any greater rights or title in the waters in question, and that, if it did so, same was void as being in violation of the provisions of the Constitution and statute aforementioned.

■ We have reached the conclusion that we cannot determine, in this summary proceeding for contempt of court and for an order restraining the violation of the permanent injunction pending this appeal, the extent or validity of the rights or title acquired by the Diversion Lake Club under the

permit to appropriate the waters in question, issued by the board of water engineers after the injunction judgment had been rendered and the appeal herein perfected. We find no Texas case in point on this question, but well-considered cases from other jurisdictions sustain our above conclusion.

In the case of Larrabee v. Selby, 52 Cal. 506, where the question of title to and possession of lands had been determined against the defendant, who thereafter acquired a new grant from the government involving the same land and took possession of the land thereunder, it was held in a statutory action for contempt of the previous judgment, as follows: "There is nothing in the case tending to show that the defendant's claim of title was not made in good faith. Proceedings to punish a party for a contempt are not the appropriate proceedings for the trial of the issue of title. If after a judgment for the plaintiff the defendant acquires the title to the premises, he has the right of entry, and the Court would not punish him for entering under his title; but the issue as to such title should be tried in an appropriate action, in which the verdict of a jury or the findings of the Court may be had upon issues properly framed for the purpose of definitely determining the question of title. Summary proceedings were not designed for that purpose."

To the same effect is the case of Mahoney v. Van Winkle, 33 Cal. 448. On principle the decision in the case of Carr v. District Court, 147 Iowa, 663, 126 N. W. 791, 796, Ann. Cas. 1913D, 378, is also in point. In that case the school board had been enjoined from selling bonds issued by the school district, on the ground that the amount of the bonds exceeded the constitutional limit, and they were unauthorized by law. After the entry of the injunction judgment, a subsequent act of the Legislature validated the bonds and authorized their negotiation, and the school board accordingly commenced negotiation for the sale of the bonds. Proceedings were filed to hold the school board in contempt of the previously granted injunction restraining the sale of the bonds; and in answer the school board set up the newly acquired authority to sell the bonds under the subsequent act of the Legislature validating them. Plaintiff asserted the invalidity of the legislative act; and the Supreme Court of Iowa, in deciding the question thus presented, held as follows: "There is no need for further discussion. Even if the act should be held invalid upon final hearing, this should not be made a ground for punishing these public officials who were attempting in good faith to follow it. A more orderly course of procedure, as it seems to us, would be to try out the issue of the validity of the act in a proper case, and, if necessary, secure a restraining order from this court to preserve the status quo during the pendency of the appeal. We shall not in this proceeding determine definitely the constitutionality of the act in question. It is enough to say that according to the record defendants were not violating the original decree of injunction in attempting to carry out the subsequent act of the Legislature. That is the pivotal question in the case. Had they been enjoined from proceeding under this new law and were claiming immunity because they were following it, a very different question would arise. Here they had not been enjoined from so doing; but claim is made that in following it they are guilty of contempt because of a prior decree passed long before the act in question went into effect. No such case is presented as would justify us in interfering with the order of the trial court."

■ These authorities clearly sustain our conclusion that the motion for contempt filed herein should not be granted because it appears that respondents are claiming under separate and independent rights or title to appropriate waters under the permit from the board of water engineers, which was granted after the rendition of the judgment from which this appeal is taken. We also think that the same rule should apply with regard to the issuance of a temporary injunction restraining respondents from violating the injunction pending the disposition of this appeal. It is manifest that, if we cannot punish for contempt any violation of the injunction because of the newly acquired rights or title to appropriate the waters, we cannot for the same reason restrain respondents from exercising such newly acquired rights or title to appropriate the waters in question.

Relators insist that the permit granted by the board of water engineers authorizing respondent Diversion Lake Club to appropriate the public waters in question "for game preserve, recreation and pleasure resort purposes," does not present any justiciable claim, right, or title in said respondents as would deprive relators of their constitutional and statutory rights to use the waters for fishing; and that, if it does grant such claim, right, or title, same is void as being violative of their constitutional and statutory rights to fish in said public navigable waters.

Article 7470a, Vernon's Ann. Civ. St. (Acts 1925, 39th Leg., c. 136, p. 341, § 1), reads as follows: "The waters of the State may be appropriated as provided by law in addition to the purposes and uses now provided by law, for the following purposes: Public parks, game preserves, recreation and pleasure resorts, power and water supply for industrial purposes and plants and for domestic use."

This act is a part of title 128, c. 1, relating to irrigation and water rights, use of state water and public and private rights therein. The record shows that respondent applied

to the board of water engineers for its permit under provision of title 128 (Vernon's Ann. Civ. St. art. 7466 et seq.), and caused relators to be served with notice of the application and hearing thereon. Relators appeared and contested the application at the hearing before the board, and protested the granting of the permit. The record also shows that respondent read the permit to relators when they came to fish in the waters in question, notifying them that respondent claimed the right to keep them from fishing under the rights or title given in the permit; and that no physical force would be used to keep them from fishing, but that a complaint would be filed against them for trespassing if they did fish in the waters in question.

■ It is clear that the permit to appropriate the waters in question granted respondents the right or title to use them for the purposes stated in the permit. Whether such right or title would authorize them to exclude and deprive relators from fishing in said waters presents a justiciable claim, right, or title not determinable in this summary proceeding, under the rule above announced. We express no opinion as to the extent or validity of the rights or title granted respondents under this permit, because such matters or issues should be tried in an appropriate action, in which the verdict of a jury or the findings of fact or conclusions of law of the court may be had upon proper pleadings and issues.

The motion will be overruled.

Motion overruled.